# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| MICHEL JOSEPH DIXON, aka Michel Dixon, aka, Michel J. Dixon, aka Michael Dixon La. DOC #457741 | CIVIL ACTION NO. 07-0203 SECTION P |
| VS. | JUDGE JAMES |
| LOUISIANA DEPARTMENT OF CORRECTIONS ET AL. | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on January 29, 2007, by *pro se* plaintiff Michel Joseph Dixon.[1]  Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Caldwell Detention Center (CDC), Grayson, Louisiana; however, he complains that he was denied proper medical care and access to the courts, that he was the victim of excessive force, that he was wrongfully exposed to danger from other inmates, that personal property was lost or stolen, that he was wrongfully convicted of disciplinary violations, and that he was exposed to inhumane conditions of confinement while he was incarcerated at the  Richwood Correctional Center (Richwood), Monroe, Louisiana, and the River Correctional Center (River), Ferriday, Louisiana.

He names as defendants: (1) the LDOC, (2) its Secretary, Richard Stalder, (3) Regional

---

[1] Plaintiff signed his complaint on January 29, 2007 [doc. 1-1, p. 11]. Under the "mailbox rule" [see *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)] that is the earliest date that the pleadings could be said to have been filed.

1

Warden Leroy Holliday, (4) Richwood's Assistant Warden William Savage, (5) its Chief of Security Gary Allen, and Corrections Officers, (6) Lt. Jackson, (7) Sergeant Coleman and (8) Sergeant Bates; and (9) River's Warden Richard Spinner, its (10) Chief of Security Bryant and (11) Corrections Officers Books and (12) Nettles.

He prays for damages totaling $100,000 and for a federal or state investigation of "illegal activities" at both facilities. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous.

### Statement of the Case

Plaintiff's original complaint [doc. 1-1], his amended complaint [doc. 9-1] and exhibits [doc. 9-2, doc. 10-2] establish the following:

### 1. Richwood Corrections Center – 5/21/2004 – 10/5/2004 and 7/22/2005 – 12/28/2006

Plaintiff arrived at Richwood on May 21, 2004.  He claims that he was repeatedly denied proper medical care.  Plaintiff claims that during the period between May 21, 2004 – October 5, 2004, he requested medical attention for head aches and dizziness. He claims that he was refused pain medication because, according to the nurses, the medication prescribed is not allowed at the facility.  However, plaintiff also claims that various nurses would offer pain medication to him in return for sexual favors.  Plaintiff admits that he was examined by a physician at E. A. Conway Hospital and prescribed pain relievers and a double portion of food was ordered during the early part of July, 2004.  He claims that these orders have not been honored at any of the facilities where he has been incarcerated.

2

Plaintiff claims that he submitted an administrative grievance complaining about the denial of access to courts and other conditions of confinement on October 3, 2004, and that on October 5, 2004, he was transferred to Rivers. [doc. 1-1, p. 7]

Plaintiff returned to Richwood on July 22, 2005. [See Section 3, below]

## 2. Rivers Correctional Center 10/5/2004 – 7/22/2005

Upon his arrival at Rivers, plaintiff was denied medical treatment and physically assaulted by corrections officers and fellow inmates. According to plaintiff, he was transferred to Rivers because he was involved in a fight with inmate Johnny Shepard at Richwood. He claims that Shepard was also transferred to Rivers and that plaintiff and Shepard were placed in the same lock-down cell at Rivers by Sgt. Nettles. Plaintiff and Shepard were involved in another fight. Plaintiff broke out the window of the cell door and broke the hinges off the door using inmate Shepard's head. Plaintiff was maced by the officers and then beaten and denied medical attention. Plaintiff claims that the use of mace on this occasion was a violation of LDOC policy and unspecified state and federal law.

According to plaintiff, in February 2005, Melissa Bowman called the prison authorities and advised that plaintiff was contacting his daughters from prison even though he was not permitted such contact. Sgt. Books and other officers removed plaintiff from his cell and beat him. Plaintiff coughed up blood for three days. A week later, these same officers told two other inmates to sexually assault and beat plaintiff. This incident began on February 24, 2005, and ended on March 4, 2005.

Again, on February 24, 2005, plaintiff was escorted to the dining hall to be present while Officer Nettles and another Corrections Officer inventoried plaintiff's property. According to

3

plaintiff, these officers read plaintiff's legal papers and discarded all evidence which tended to prove plaintiff's innocence of the charges for which he had been convicted and imprisoned. Further, plaintiff's outgoing and incoming "legal mail" was blocked.  Sgt. Nettles gave unspecified items of plaintiff's property to other inmates.

On March 4, 2005, plaintiff was escorted to Chief Bryant's office.  Bryant  threatened to kill plaintiff should he contact his daughters again.

### 3. Richwood Detention Center,  July, 2005 – December 28, 2006

After filing grievances at Rivers, plaintiff was transferred to the Richland Detention Center[2] in March 2005 and then returned to Richwood on July 22, 2005.  According to plaintiff, he was again denied medical treatment during his second incarceration at Richwood.  His outgoing and incoming legal mail was again blocked.

In August 2006 plaintiff requested copies of a Petition for Writ of *Certiorari* to the United States Supreme Court.  However, Assistant Warden William Savage refused to permit plaintiff to make ten copies as required by Court Rules and also refused to mail plaintiff's pleadings to the Court.  Savage, Security Chief Gary Allen and former Captain Michael Holliday seized documents that corroborated plaintiff's post-conviction relief claims.  After months of requesting their return, Savage advised plaintiff that the material was seized to prohibit plaintiff from establishing his innocence.

### 4. Claims Against Individual Defendants

Plaintiff was directed to amend his complaint to provide the identities of each defendant

---

[2] According to plaintiff, he did not include Richland in the suit because that facility is not owned or managed by the same private corporation that operates Richwood and Rivers.

4

and to provide a description of what each defendant did to violate plaintiff's rights. [doc. 8, p. 4] In his response, he named only four defendants:

1. LDOC Secretary Stalder was named as a defendant because plaintiff mailed numerous Administrative Remedies Procedure grievances to him and he failed to respond.  Stalder is responsible for the welfare of inmates in the custody of LDOC and his failure to address the issues raised by plaintiff renders him liable. (According to plaintiff, Stalder did respond to him on one occasion and in that letter, Stalder threatened to have plaintiff committed to the Louisiana State Penitentiary at Angola.  Plaintiff does not have a copy of this letter because it was confiscated by prison authorities; he did send a copy of the letter to his estranged wife; however, she destroyed the copy as well.)

2. Regional Warden Leroy Holliday is the supervisor of both Richwood and Rivers and plaintiff's grievances to him "were met with hostility." According to plaintiff, Holliday threatened to make his life a "living hell."

3. Warden Richard Spiner of Rivers is responsible for the actions of those under his authority.

4. Assistant Warden William Savage advised plaintiff that he would ensure that plaintiff not receive medical treatment and denied plaintiff access to the courts by denying plaintiff's ARP grievances in January and December 2006.

### 5. Claims for Relief

#### a. Medical Care/Failure to Protect

Plaintiff claims that he suffered from a variety of pre-existing injuries and conditions upon his entry into prison.  According to plaintiff, nurses at Catahoula Corrections Center

5

attempted to provide appropriate care and treatment, but were forced to discontinue their efforts by prison administrators.

An unnamed nurse at River Correctional Center ensured that plaintiff receive no medical treatment and behaved in an "openly hostile and malicious" manner against plaintiff.

An unnamed Nurse at Richland Detention Center reviewed plaintiff's file and arranged for plaintiff to be examined by Dr. Thompson; however the physician was not concerned with plaintiff's condition.

Nurse Lewis at Richwood advised plaintiff that she was aware of his needs but made it clear that she was not authorized to assist him.

### b. Access to Court

Plaintiff admits that he has "little to go on." He claims that the defendants verbally advised him that they would block his access to courts.  According to plaintiff, he missed various filing deadlines and had cases dismissed because his pleadings were seized and not submitted to the courts.  He claims that inmate counsel have advised that they were under orders to refrain from assisting plaintiff in any legal matters.

### c. Limitations

Plaintiff was advised that his claims were subject to dismissal because it appeared that the claims were filed beyond the period of limitations provided by law. [doc. 8] Plaintiff claims that he was unaware of the limitations period because the defendants denied him access to the law library and blocked his legal mail.

Plaintiff claims that he was advised that he had a period of one-year from the date he was transferred from the facility he was filing suit against within which to file suit.  He also claims

that he should be excused because of his lack of intellect and his failure to comprehend the law because of previous injuries.

*Law and Analysis*

*1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint.  Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

7

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint recites the facts relied upon to support his specific theories of liability.  Therefore, further amendment of these pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that the plaintiff's claims are frivolous.

### 2. Limitations

District courts are authorized to dismiss a complaint as frivolous when "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations."  *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993).  A district court may raise the limitation period *sua sponte*. See *Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984).

The date of accrual for a §1983 claim is a question of federal law.  *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986).  "Under federal law, the limitations period commences when the aggrieved party has

either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co*., 635 F.2d 455, 459 (5th Cir. 1981).  A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim.  See, *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Plaintiff's claims for the events occurring during his initial incarceration at Richwood Corrections Center accrued, at the latest, on October 5, 2004, when he departed that facility. Likewise, his claims for the events occurring during his incarceration at Rivers Correctional Center accrued, at the latest, on July 22, 2005, when he departed that facility.

The Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by La. Civ.Code Ann. art 3492 in a §1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).  As shown above, plaintiff's suit must be considered to have been filed on January 29, 2007, the date he signed his complaint. [See footnote 1, *supra*] Thus, all claims which accrued prior to January 29, 2006, are prescribed and dismissal on that basis is appropriate.

### 3. Equitable Tolling

Plaintiff suggests that he should be entitled to the benefits of equitable tolling.  Equitable tolling principles apply to civil rights cases filed under 42 U.S.C. § 1983. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir.1998).  Plaintiff's only excuse for his late filing is ignorance of the law and various physical and mental disabilities; however, lack of knowledge about the law does not justify equitable tolling. See, *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (finding ignorance of the law does not excuse a person's failure to comply with a

statute of limitations); *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir.1999) (holding plaintiff's unfamiliarity with the legal process and lack of legal representation during the filing period do not warrant equitable tolling); *Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir.2000) (discussing the availability of equitable tolling in the context of *habeas corpus* under the AEDPA and noting that neither ignorance of the law, lack of knowledge of filing deadlines, a prisoner's *pro se* status, lack of access to federal statutes and case law, incarceration, illiteracy, deafness, lack of legal training, nor actual innocence claims support equitable tolling of the AEDPA statute of limitations); see also *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir.2002) ("[equitable tolling] will not be applied where the applicant failed to diligently pursue ... relief...").

All of the claims which accrued prior to January 2006 are prescribed, and plaintiff is not entitled to the benefits of equitable tolling.

*4. Remaining Claims (Post January 2006)*

Plaintiff was incarcerated at Richwood Corrections Center for a second time between July 2005 and December 2006. Thus, any claims which arose after January 29, 2006, remain viable. The undersigned has conducted a thorough review of plaintiff's pleadings and identified only the following claims which meet that criteria.

*a. Access to Courts*

Plaintiff claims that in August 2006 he requested copies of a Petition for Writ of *Certiorari* to the United States Supreme Court. However, Assistant Warden Savage refused plaintiff's request to make ten copies as plaintiff claims are required by Court Rules and refused to mail plaintiff's pleadings to the Court.  Thereafter, also ostensibly in August 2006, Savage and Gary Allen and Michael Holliday seized documents which purportedly corroborated plaintiff's

actual innocence claims.

The right of access to the courts assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

However, prison officials  have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims.  See *Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.")

Plaintiff's allegations, construed liberally and all taken as true for the purposes of this review, suggest that prison officials impeded him with respect to the petition for writ of *certiorari* he attempted to file in the United States Supreme Court in August 2006.   As stated above, the Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d at 821. See also *Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).  Furthermore, accepting plaintiff's version of the events of August 2006 leads to the inescapable conclusion that prison officials interfered with plaintiff's attempt to transmit

documents to the United States Supreme Court.[3]

However, that fact alone does not establish an actionable claim of interference.  A civil rights plaintiff must still allege facts to establish that he suffered some prejudice as a result of the defendants' interference.  That requirement has long been established by Supreme Court and Fifth Circuit jurisprudence. See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).

With respect to the events of August 2006, plaintiff has not, nor  is he able to establish prejudice.  This is so because review in the United States Supreme Court by writ of *certiorari* is not a matter of right, but of judicial discretion.  A petition for writ of *certiorari* must be filed within 90 days from the date of the entry of final judgment in the United States Court of Appeals or the highest state appeals court. [See Supreme Court Rules 13.1 and 13.3].  A review of the published jurisprudence reveals that plaintiff had only one matter reviewed by Louisiana's highest appeals court, the Louisiana Supreme Court, and that the Louisiana Supreme Court denied his writ application on February 25, 2005.  See *State of Louisiana ex rel. Micheal Dixon v. State of Louisiana*, 2004-1039 (La. 2/25/2005), 894 So.2d 1140.  Plaintiff had 90 days from February 25, 2005, or until May 25, 2005, to timely apply for *certiorari* in the United States

---

[3] To the extent that plaintiff asserts that he was required to submit 10 copies of his pleadings to the Supreme Court, that claim is without a basis in fact.  According to Supreme Court Rules, inmates proceeding pro se need file only the original of their application for in forma pauperis, petition for certiorari, and proof of service. They are specifically exempted from the requirement that litigants submit 10 copies of such pleadings. See U.S. Supreme Court Rules 39, 14.1(i), and 29.

Supreme Court.  Thus, his allegedly thwarted efforts in August 2006 would have been doomed to failure even absent the alleged interference of the prison authorities.  In other words, plaintiff cannot show that the actions of the defendants in August 2006 interfered with his right to obtain a writ of certiorari in the United States Supreme Court.

His destruction of evidence claim fares no better for several reasons.  First, his claim that the evidence destroyed by prison officials was exculpatory and would establish his innocence is a purely conclusory allegation.  Such conclusory allegations are insufficient to establish liability pursuant to §1983.  See *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir.2002); *Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir.1987); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Second, plaintiff again fails to show how the destruction of these documents resulted in prejudice.  The loss of these papers should have in no way impeded plaintiff from raising claims related to his actual innocence.

In short, although timely, plaintiff's access to courts claims are frivolous and dismissal on that basis is recommended.

### b. Additional Claims (Disciplinary Proceeding, Conditions of Confinement in Lock Down, Loss of Property and Failure to Protect)

Plaintiff was placed in lock down without any clothes on December 21, 2006, after plaintiff was involved in a fight with a fellow inmate who had stolen plaintiff's cigarette lighter.  Plaintiff was placed in restraints and placed in a two-man lock down cell with eight other inmates.  Plaintiff was denied a mattress and forced to sleep with his head beside a toilet.  During his stay in lock down, plaintiff's clothes, his radio, and his personal papers were stolen.

The disciplinary report stated that plaintiff started the fight without provocation and beat

13

another inmate to the floor.  Plaintiff disputes this allegation and notes that the other inmate was not charged.

On December 25, 2006, while plaintiff was being escorted in restraints to the shower at 4:00 a.m., another inmate was released from his restraints and allowed to assault plaintiff while the Corrections Officers stood by laughing.

None of these claims entitle plaintiff to relief.

### i. Disciplinary Proceeding

First, plaintiff implies that he was wrongfully convicted of a disciplinary rules violation and thereafter wrongfully confined to lock down.  He implies that he was denied liberty without due process.  By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. See *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  In order to invoke pre-deprivation procedural due process protections, a prisoner must first establish that he has been subjected to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  On the basis of *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights); *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir.1996) (federal prisoner's detention for three months in administrative segregation did not constitute a significant, atypical hardship which constituted a deprivation of a liberty interest). The Fifth Circuit has also rejected a state prisoner's claim that the additional

14

restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). It stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

Thus, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy.  *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). The Fifth Circuit has held that "... mere[ ] changes in the conditions of [ ] confinement and do not implicate due process concerns." See *Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Petitioner's claims regarding his disciplinary rules conviction and resultant confinement in lock down fail to state a claim for relief and should be dismissed as frivolous.

### ii. Conditions of Confinement in Lock Down

Next, plaintiff complains that he was placed in an overcrowded lock down cell and forced to sleep on the floor next to a toilet during his week-long confinement in lock down in December 2006.

"The Constitution 'does not mandate comfortable prisons,' ... but neither does it permit inhumane ones...." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Prison officials must provide humane conditions of confinement, including adequate food, shelter, medical care, and reasonable safety. *Farmer*, 511 U.S. at 832 (citations omitted).

"A two-part test determines whether a prisoner has established a constitutional violation."

15

*Harper v. Showers*, 174 F.3d 716, 719-20 (5th Cir.1999) (citing *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). The prisoner must show: "first, that the deprivation alleged was sufficiently serious ...; and second, that the prison official possessed a sufficiently culpable state of mind." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir.2001). For the second element of a conditions of confinement claim, the Supreme Court has defined "culpable state of mind" to mean that the "official acted with deliberate indifference to inmate health or safety." *Id.*  "It is ... fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. At this step, the prisoner must show that the "defendant officials '(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) ... actually drew an inference that such potential harm existed.'" *Herman*, 238 F.3d at 664 (quotation omitted).

With regard to the overcrowded and generally unsanitary conditions,  plaintiff has alleged no serious harm resulting from his week long exposure to these conditions.  Because the Eighth Amendment prohibits cruel and unusual <u>punishments</u>, not merely cruel and unusual <u>prison conditions</u>, a plaintiff must allege that he suffered a "serious or significant physical or mental injury as a result of the challenged condition." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993); *White v. Gregory*, 1 F.3d 267, 269 (4th Cir.1993).  Plaintiff has failed to make such an allegation; therefore, his conditions of confinement complaint based upon overcrowding and unsanitary conditions in the lock down cell fails to allege a claim for which relief may be granted.

Further, to the extent that plaintiff might suggest a mental or emotional injury resulting

16

from the unsanitary conditions, his claim is also subject to dismissal.  Under 42 U.S.C.
§ 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)) (alteration in original).  As shown above, plaintiff has alleged no physical injury resulting from the unsanitary conditions of confinement in lock down during his week long stay in December 2006.   Since he has alleged no physical injury as a result of these conditions of confinement, he has failed to state a claim for which relief may be granted. *Alexander v. Tippah County, Miss*., 351 F.3d 626 (5th Cir. 2003), *cert. denied*,  541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004); *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001).

### iii. Loss of Property Claim

Plaintiff claims that various items of personal property were lost or stolen during his week-long stay in lock down during the month of December 2006. He implies that the defendant corrections officers either stole the property themselves, or allowed plaintiff's fellow inmates to do so.

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States.  42 U.S.C. §1983.  Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913. The Due Process Clause does not embrace tort law concepts. *id.* Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy. Even in instances where intentional deprivation occurs, as is alleged herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation,

18

demonstrate that an either an intentional or an unintentional, random, and unauthorized deprivation occurred when items of personal property were stolen.  If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility.  See, La. Civil Code, Article 2315. This provision of state law, which is the general tort provision of Louisiana's Civil Code, provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's property claim is clearly barred by the *Parratt/Hudson* doctrine.

### iv. Failure to Protect

Finally, plaintiff contends that unnamed corrections officers permitted a fellow inmate to assault him as he was being escorted to the shower on December 25, 2006. According to plaintiff, he got the better of the assailant because a fellow inmate, Robert Dixon, "... thought it was funny because plaintiff was beating the other inmate intended to injure the plaintiff..."

This claim, if true, is, of course, deplorable.  Nevertheless, plaintiff asserts no physical injury resulting from the assault and therefore, he is not entitled to damages. See  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999);  *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003), *cert. denied*,  541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004); *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001).

### 5. Remaining Defendants

As shown above, plaintiff initially named twelve defendants in his original complaint. [doc. 1-1] On April 3, 2007, he was directed to amend his complaint to provide the name of each person who allegedly violation his constitutional rights and to describe in detail what each defendant did to violate his rights. [doc. 8, p. 4] In his amended complaint [doc. 9-1], plaintiff named only four defendants, LDOC Secretary Stalder, Regional Warden Leroy Holliday, Warden Richard Spiner of Rivers Correctional, and Richwood's Assistant Warden Savage. [doc. 9-1, pp. 6-8] As shown above, all of the complaints concerning Rivers Correctional are prescribed and therefore plaintiff's claims against Warden Spiner are subject to dismissal on that basis.

With respect to the claims against Secretary Stalder, Regional Warden Holliday, and Assistant Warden Savage, it appears that plaintiff has named these defendants in their supervisory capacity. [see doc. 9-1, pp. 6-8] .  It is well settled that supervisory officials may not be held liable under § 1983 under the doctrine of *respondeat superior*.  *Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); *Jennings v. Joshua Indep. Sch. Dist*., 877 F.2d 313 (5th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

To be liable under § 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir.1998).

Plaintiff fails to make sustainable allegations which would establish supervisory liability on the part of these supervisory officials.  To establish the personal liability of these defendants, plaintiff must show that their personal action or inaction violated his civil rights. *Reimer v.*

20

*Smith*, 663 F.2d 1316, 1322 n. 4 (5th Cir.1981).  Plaintiff has alleged no facts to establish that these defendants were personally involved in the events that survive dismissal on the basis of limitations.

Further,  plaintiff failed to allege that any of these defendants implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights.  Accordingly, plaintiff has failed to state a claim pursuant to § 1983 against remaining defendants.

### 6. Conclusion and Recommendation

Plaintiff's complaint should be considered filed on January 29, 2007 since that is the date he signed his complaint. [See footnote 1, *supra*] Thus, all claims which arose prior to January 29, 2006, are barred by the one-year period of limitations.

Those claims not barred by the limitations period have been identified and dismissal of those claims as frivolous and for failing to state a claim for which relief might be granted is recommended.

Therefore,

**IT IS RECOMMENDED**  that plaintiff's Civil Rights Complaint be **DISMISSED** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(d)(2)(b)(i) and (ii) and § 1915A(b)(1).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

21

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

In Chambers at Monroe, Louisiana, October 31, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

22